| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>-------------------------------------------------------x<br>In re<br><br>**WINDWARD LONG, LLC**,<br>        Debtor.<br><br>-------------------------------------------------------x | **Hearing Date and Time:**<br>**July 29, 2020 @ 9:30 am**<br><br>**Chapter 11, subchapter V**<br>**Case No. 820-72041-reg** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTOR'S APPLICATION TO APPROVE DEBTOR IN POSSESSION FINANCING AND FOR RELATED RELIEF**

To: THE HONORABLE ROBERT E. GROSSMAN,
   UNITED STATES BANRKUPTCY JUDGE:

    **WILLIAM K. HARRINGTON**, the United States Trustee for Region 2 (the "United States Trustee") by his counsel, in furtherance of his duties under 28 U.S.C. section 586, and in support of the United States Trustee's objection to the request of Windward Long LLC for approval of post-petition financing under 11 U.S. C. section 364 (the "Motion"), represents and alleges as follows:

## PRELIMINARY STATEMENT

    The Debtor acquired its interest in a parcel of real property located at 226 Lawson Street, Hempstead, New York ("Property"), in August 2017. It did so by purchasing, for what is believed to be a nominal sum, a referee's deed and taking title to the Property subject to the interests of the first lienholder. The Debtor has indicated that the Property is vacant, and non-income producing. The Debtor is seeking the extraordinary relief of borrowing funds secured by a super priority lien, priming the first lienholder. The Debtor has not demonstrated that it cannot borrow other than on a super-priority basis, and critically, based upon the Debtor's valuation of the Property, there is no equity cushion. Consequently, the Debtor is not adequately protecting

1

the interests of the first lienholder. Finally, the Debtor has failed to provide notice reasonably calculated to notice the first lienholder of the relief sought in the Motion. The Debtor's Motion should be denied in its entirety.

## FACTS

1. On May 12, 2020, the "Debtor filed its voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and simultaneously elected to be treated as a sub-chapter V small business debtor (ECF Docket No. 1).

2. The Debtor is represented by the firm of Hasbani & Light, P.C., Seth Weinberg, Esq., as counsel ("Counsel").

3. On May 15, 2020, the United States Trustee appointed Gerard R. Luckman as the subchapter V trustee (the "Trustee") (ECF Docket No. 2).

4. According to the Debtor's schedules, the Debtor is the owner of the Property, which is the Debtor's sole asset. The schedules list one creditor, Bank of America. N.A., Successor by Merger to BAC Home Loans Servicing LP f/k/a Countrywide Home Loan Servicing, LP., the holder of a lien against the Property in the approximate amount of $435,342.22 ("First Lienholder").

5. The Debtor's sole managing member, Yonel Devico ("Devico") testified at the May 26, 2020 first meeting of creditors pursuant to 11 U.S.C. section 341(a) ("341 Meeting"), that the Debtor acquired the Property by purchasing the referee's deed at the foreclosure action subject to the lien of the First Lienholder. Devico also testified that Property is not rented or generates any income.

6. On June 4, 2020, the Debtor made an application seeking entry of an order valuing the Property at $110,000 ("Valuation Motion") (ECF Docket No. 15). A hearing on the Valuation Motion has been scheduled for July 29, 2020.

7. On June 4, 2020, the Debtor filed this Motion (ECF Docket No. 12). A hearing on the Motion has been scheduled for July 29, 2020.

8. In brief, the Debtor is seeking to borrow up to $79,500 from Loyd Financing LLC ("Loyd") secured by a super-priority lien on the Property. According to the Motion, the funds would be used to renovate the Property and fund the Debtor's plan of reorganization (ECF Docket No. 16, paragraph 12 on pg. 7 in the Motion). The proposed budget merely lists a number of projects, contains no detail on who will perform the work, or whether the contractor is licensed or insured, or any expected timeline. In addition, there is no budgeted line item for plan funding.

9. Devico's affidavit (the "Affidavit") in support of the Motion, indicates that the Debtor sought financing from three lenders and only one agreed to provide financing (*See* Debtor's Application in Support at paragraph 9). The Affidavit does not provide any other information and does not indicate whether Loyd is a related entity.

10. The Debtor proposes to prime the First Lienholder, and in response to the United States Trustee's inquiry concerning whether the proposed transaction would adequately protect the First Lienholder, responded that once the renovations are complete, the Property's value will be enhanced, thereby adequately protecting the First Lienholder.

## APPLICABLE LAW

11. The Bankruptcy Code at section 364 provides that, subject to Court approval, after notice and a hearing, a debtor in possession may borrow funds in any number of ways. That is, on a unsecured basis as an administrative expense, or, if the debtor is unable to obtain credit as an administrative expense, the borrowing may be authorized with priority over administrative expenses, or secured by a lien on property not otherwise subject to a lien, or secured by a subordinate lien. Finally, the Bankruptcy Code at section 364(d) empowers the Court to approve borrowing secured by a senior or equal lien on the property only if the debtor is unable to obtain credit by any other method and there is adequate protection for the existing lien. The debtor bears the burden of proof on the issue of adequate protection. (See 11 U.S.C. section 364).

12. Granting post-petition financing on a priming basis is extraordinary relief and is allowed only as a last resort. *In re YL West 87th Holdings 1, LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) citing *In re Seth*, 281 B.R. 150, 153 (Bankr.D.Conn.2002).

13. The debtor seeking to secure its borrowing by a priming lien has two burdens to carry under section 364(d). The first prong of Bankruptcy Code section 364(d) requires the debtor to demonstrate that less onerous post-petition financing was unavailable. *In re Beker Industries Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y.1986). The debtor's second burden is to demonstrate the existence of adequate protection. *In re Reading Tube Industries,* 72 B.R. 329, 334 (Bankr. E.D. Pa. 1987).

14. Reliance solely upon the debtor's principal for a determination that borrowing is unavailable under less onerous terms does not satisfy the debtor's burden under the first prong of Bankruptcy Code section 364(d) (*see Reading Tube, Id.* 72 B.R at 333)( when a

debtor chose to rely solely upon the opinion of its chairman of the board to demonstrate the unavailability of other financing, the court denied the debtor's request for financing under the first prong of Bankruptcy Code section 364(d)).

15. With respect to the second prong of Bankruptcy Code section 364(d), while the determination of what is adequate protection for secured creditors is left to the vagaries of each case the ". . . . focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process." *In re Beker Indus.,* 58 B.R. 725, 736 (Bankr.S.D.N.Y.1986). Priming is impermissible unless there is adequate protection to existing lien holders. *See In re First South Sav.*, 820 F.2d 700, 701–11 (5th Cir.1987).

16. The existence of an equity cushion seems to be "the preferred test in determining whether priming of a senior lien is appropriate under section 364." *YL West 87th, id.,* 423 B.R. at 442 citing *In re Strug–Div., LLC*, 380 B.R. 505, 513 (Bankr.Ill.2008). As one Court aptly stated, where there is no equity cushion, section 364(d)(1)(B) is not satisfied. *Reading Tube Id.*, 72 B.R, 333–34.

17. Other courts have used a "holistic approach" by analyzing all relevant facts "with a particular focus upon the value of the collateral, the likelihood that it will depreciate or appreciate over time, the prospects for successful reorganization of the debtor's affairs by means of the Plan, and the Debtor's performance in accordance with the Plan." *YL West 87th, id.,* 423 B.R. at 441 citing *In re Tashjian*, 72 B.R. 968, 973 (Bankr.E.D.Pa.1987).

18. But, "Congress did not contemplate that a secured creditor could find its position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects." *In re Windsor Hotel, L.L.C.*, 295 B.R. 307, 314 (Bankr. C.D.Ill 2003) citing *Swedeland Development Group*, 16 F.3d

at 567. (*See* also *In re Mosello,* 192 B. R. 277 (Bankr. S.D.N.Y. 1996) (court denied a priming lien where the debtor claimed future value would constitute adequate protection but first required the property to be subdivided into twenty building lots, then developed and sold over a three-year period, after obtaining zoning approvals, installing roads and sewage facilities); and *YL West, Id.,* 423 B.R. at 441 (court denied request for a priming lien finding that post-construction potential increased value was insufficient to provide adequate protection)).

19. Addressing the authority to prime an existing lien, the *Windsor* Hotel court noted that priming an existing lien " . . . should not be read as authorization to increase substantially the risk of the existing lender in order to provide security for a new, post-petition lender. When the effect of the new borrowing with a senior lien is merely to pass the risk of loss to the holder of the existing lien, the request for authorization should be denied." *Windsor Hotel, id.,* 295 B.R. at 314 citing 3 Collier on Bankruptcy ¶ 364.05[1] (15th Ed. Rev'd).

**ARGUMENT**

20. In the case at bar, there is no doubt the Debtor is seeking extraordinary relief. As will be explained herein, the Debtor cannot satisfy either of its statutory burdens, and is therefore not entitled to the relief sought.

21. Initially, on a procedural basis, the United States Trustee submits that the notice provided to the First Lienholder, was inadequate. Specifically, the Debtor apparently mailed the Motion to a location in North Carolina. There is no indication as to whom the notice was addressed. Moreover, since the Debtor purchased an interest in this Property in a Nassau County foreclosure action via a referee's deed, subject to the first lien, it is not inappropriate to conclude that the Debtor can notice the First Lienholder by the exercise of reasonable diligence.

Upon information and belief, although Counsel met the New York attorney who handled the state court foreclosure action on behalf of the First Lienholder ("Creditor's Attorney"), the Debtor neglected to serve a copy of the Motion on the Creditor's Attorney.  Instead, the Debtor merely mailed the Motion to the First Lienholder's office located in North Carolina.  The United States Trustee submits that the notice provided was not reasonably calculated to provide adequate notice, especially during a pandemic when many offices are unstaffed and that the Debtor should have performed some due diligence to locate the First Lienholder, and its counsel.

22. The United States Trustee also submits that the Debtor has not demonstrated that less onerous financing was unavailable.  The Debtor, similar to the debtor in *Reading Tube*, relies solely on the opinion of its principal. There is no indication that the Debtor conducted any other analysis, and more importantly, other than a statement in the proposed order that the negotiation between Loyd and the Debtor was arms-length, there is no evidentiary support for that conclusion.  It is simply unclear whether Loyd is related in any way to the Debtor, or Devico.

23. The United States Trustee also submits that the Debtor has not carried its burden that the First Lienholder's interest will be adequately protected.  The Motion is devoid of any explanation of how the renovations will adequately protect the First Lienholder's position. In fact, if the First Lienholder's lien is now only secured to the Property's value of $110,000, a $79,500 priming lien severely diminishes the First Lienholder's position.   As set forth herein, and as is evident from the facts of this case, there is no equity cushion.  In the absence of an equity cushion, and based upon the terms of the proposed borrowing, the Debtor cannot satisfy its burden that the First Lienholder is adequately protected.

24. The Debtor has advised the United States Trustee that upon completion of the anticipated work, the First Lienholder will be protected. However, the Motion fails to indicate who the contractor is, who the architect is, whether either are properly licensed, whether the plans are approved or are in accord with the applicable building codes or regulations, whether the contractor is insured. There is no information on a timeline, whether the renovations have a scheduled start and completion date, and how long it will take to put the Property into an income-producing posture. The United States Trustee is also concerned that the Property may be inhabited by squatters. The unexplained variables and contingencies underlying the proposed borrowing exposes the estate to additional and unprotected risk.

25. As the Court determined in *Windsor Hotel*, *id.,* 295 B.R. at 314, the decree of adequate protection that is required to authorize the extraordinary relief of a priming lien, does not equate with the existing lienholder assuming the risk for the benefit of a new lender.

26. Here, if the proposed financing is approved, the First Lienholder's position will be substantially eroded, with the only possibility for recoupment, a risky renovation and a still greater risky rental of the Property, which upon information and belief, has failed to produce any income in the past. As the *Moselle* Court opined, "the debtors' development scheme is beset by uncertainty and risk, and the ultimate outcome of the project is a matter of speculation based upon assumptions which cannot be quantified or verified by objective evidence."*Mosell, Id.* 192 B.R. at 290 (denying debtor's request for a priming lien to finance a future development when the first lienholder was undersecured).

## **CONCLUSION**

27.     The Debtor's financing proposal cannot be approved because the Debtor has failed to satisfy its statutory burdens that no other financing is available, and most critically, because there is no equity cushion, the Debtor cannot provide adequate protection to the First Lienholder.  Finally, the United States Trustee submits that the failure to serve the Motion in a manner reasonably calculated to provide notice weighs in favor of denying the relief sought.

**WHEREFORE,** the United States Trustee respectfully requests that the Motion be denied in its entirety and that the Court grant such other and further relief as may be just and proper.

DATED:   Central Islip, New York            WILLIAM K. HARRINGTON
           July 22,  2020                                   UNITED STATES TRUSTEE REGION 2
                                                      560 Federal Plaza
                                                      Central Islip, New York  11722
                                                      Telephone (631) 715-7800

                                                By:   _/S/  Stan Y. Yang_
                                                        Stan Y. Yang
                                                        Trial Attorney